COON v. MILLER.

(Supreme Court, Appellate Division, First Department. June 28, 1912.)

1. BILLS AND NOTES (§ 503*)—MATERIALITY—RES INTER ALIOS ACTA.
    Defendant executed a note to the order of C., which the latter indorsed and redelivered to defendant, who procured it to be discounted by his bank, and with the proceeds purchased certain corporate stock which he delivered to the payee. The note was again rediscounted by the bank, and, on its refusal to discount it a third time, the payee gave defendant his check, with which defendant took up the note, and delivered it to the payee, who assigned it to plaintiff, the payee claiming that the note was executed to enable defendant to purchase the stock for his own benefit, while defendant claimed that he refused to purchase any stock for himself and executed the note for the payee's accommodation to assist him to purchase additional stock for himself. *Held*, that evidence as to the amount of payee's bank deposit at the time the note was executed was irrelevant as res inter alios acta, and inadmissible to show the improbability that the payee would have needed accommodation at the time.
    [Ed. Note.—For other. cases, see Bills and Notes, Cent. Dig. §§ 1733–1739; Dec. Dig. § 503.*]

2. BILLS AND NOTES (§ 538*)—ACCOMMODATION PAPERS—INSTRUCTIONS.
    Where, in an action on a note, defendant claimed that it was executed for the accommodation of the payee, while the latter testified that it was executed to raise money to assist the defendant in purchasing certain stock, it was error to refuse to instruct that, if the jury found that the note was delivered to defendant on condition that the payee as in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dorser would never hold defendant liable, but would himself pay the note at maturity, their verdict should be for defendant.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1895–1898, 1900–1910; Dec. Dig. § 538.*]

Appeal from Trial Term, New York County.

Action by Frederick W. Coon against James A. Miller, Jr. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Emil Goldmark, of New York City, for appellant.

George H. Taylor, Jr., of New York City, for respondent.

SCOTT, J. The action is upon a promissory note made by the defendant to the order of Daniel W. Coon and indorsed to plaintiff. It is conceded that plaintiff is an indorsee, without consideration, and that any defense available against Daniel W. Coon is available against plaintiff. The defense is that the note was made for the accommodation of said Daniel W. Coon, and that defendant received no consideration for making it. The history of the note is not in dispute. Prior to 1906 Daniel W. Coon was vice president of the International Shirt & Collar Company, and Miller, the defendant, was the New York manager of its business. Coon had a large investment in the business, and was largely liable upon its obligations. In 1906 this company became absorbed into the corporation of Curtis, Leggett & Co., which assumed the liabilities of the International Company, thus relieving Coon, who became the largest stockholder and vice president of Curtis, Leggett & Co., for whom Miller continued to be the New York manager. In August, 1906, Curtis, Leggett & Co. proposed to issue $250,000 of preferred stock, and Coon subscribed for $70,000 thereof. At this time Coon and Miller had a conversation regarding the purchase by Miller of some of the preferred stock. Coon says, in effect, that Miller expressed a desire to purchase some of the stock if he, Coon, would help him to do so. Miller says that he positively refused to purchase any stock, and that Coon then asked his help in purchasing $5,000 additional to that for which he had already subscribed.

The whole case turns upon which of these versions is the true one. The subsequent acts of the parties would fit either version. On January 14, 1907, Miller, who was a depositor in the Fifth Avenue Bank, make a six months' note to Coon's order for $5,000, which Coon indorsed. The Fifth Avenue Bank discounted it placing the proceeds to Miller's credit, who thereupon drew a check for $5,000 to the order of Curtis, Leggett & Co., which he sent to that company, and in due course received a certificate made out in his name for 50 shares of the preferred stock. He indorsed the certificate, and delivered it to Coon, who retained it. When this first note became due, in July, 1907, Coon gave Miller a check for $5,000, which the latter deposited in the Fifth Avenue Bank to meet the note. Miller

then drew another six months' note for $5,000, which Coon indorsed, and which was again discounted by the Fifth Avenue Bank and the proceeds placed to Miller's credit, who at once repaid the $5,000 to Coon. When this second note became due, in January, 1908, the Fifth Avenue Bank refused to renew it, and Coon gave Miller a check for $5,000 to meet it. Miller thereupon made and delivered to Coon the promissory note in suit which was drawn to Coon's order, dated January 14, 1908, and payable six months after date at the Bank of the Metropolis, which was Coon's bank of deposit, but in which Miller had no account. Miller testifies that Coon said that he would have the note discounted by the Bank of the Metropolis. Coon denies this. At all events, he did not have it discounted. We have then two diametrically opposite stories of the transaction, each story supported by the oath of the party telling it, with little aid from the uncontroverted facts. Coon's evidence was taken by commission. He gave his version of several conversations between himself and Miller, saying as to each one, or nearly every one, that a Miss Waldron, the bookkeeper, was present. She was called as a witness, and testified that she had not been present at any of the interviews. A witness named Ballingall, a certified public accountant, apparently quite indifferent between the parties, was called by defendant. He had been employed by the receiver of Curtis, Leggett & Co., after its failure to examine into the conditions of the company. He thus became acquainted with Daniel W. Coon and with the plaintiff. He testified that Daniel W. Coon told him "that he had put up $70,000 for preferred stock of Curtis, Leggett & Co., and that was practically gone, and in addition to that there was $5,000 worth of stock standing in Miller's name, which was his, and unfortunately it had not been paid for at that time." He also testified that plaintiff had said to him, speaking of Miller's stock: "Well, my father owns that stock. It was simply in Miller's name." This witness was not cross-examined.

[1] With this testimony uncontradicted in the record, it is difficult to say that the plaintiff's story of the transaction was supported by a preponderance of the evidence. At least, the defendant's version was so well supported that errors adversely affecting him assume an importance that might not, under other circumstances, attach to them. The court admitted evidence of the condition of Coon's account in the Bank of the Metropolis on the three dates that notes were made; the object of the evidence being to show the improbability that on those dates Coon would have found it necessary to invoke Miller's aid to raise $5,000. This is assigned as error, and I think that it was. The evidence standing alone proves nothing except that on each occasion Coon had on deposit more than $5,000. What obligations he had to meet, or what uses he had for money, did not appear, and in the nature of things could not be shown by defendant. Not only was the evidence that of res inter alios acta, but it had no connection with, or probative force concerning the real issue in the case which was, what was the agreement between the parties. Its probable effect was to draw away the minds of the jury from the real issue in the case, and to encourage them to speculate as to the fact. It may

have been what is sometimes called moral evidence, but it was not legal evidence.

[2] At the close of the case the defendant asked the court "to specifically charge the jury that if they find that the note was delivered to Mr. Miller on condition that Mr. Coon as indorser would never hold Miller liable, and that Coon would pay the same at maturity, their verdict must be for the defendant." To which the court replied, "I will charge them no differently on that subject than I have charged," to which defendant excepted.

I think that the defendant was clearly entitled to the charge requested, and a reference to the colloquial charge shows that the court had nowhere charged in plain language the proposition involved in the request. It may be that that was the general purport of the charge, but it was not plainly put so as to impress it upon the jury, and the manner in which the request was refused may well have led the jury to believe that the requested charge was one to which the defendant was not entitled. The request is criticised because it contained the words "on condition," but the whole course of the trial shows that defendant had never claimed that he had made the note conditionally. What was plainly meant and what the jury would have understood was that the note was made upon the agreement that Coon would take care of it. In other words, that it was for Coon's accommodation.

In my opinion the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.